UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRELL A. WAGNER                              CIVIL ACTION

VERSUS                                         NO. 11-2030

BOH BROS. CONSTRUCTION                         MAGISTRATE JUDGE
CO., LLC.                                      JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

In this employment discrimination case brought pursuant to 42 U.S.C. § 1981,

plaintiff Darrell A. Wagner alleges in his complaint that his former employer, Boh Bros.

Construction Co., LLC, failed to promote him because of his race, subjected him to a

racially hostile work environment and retaliated against him for having complained about

race discrimination.  Complaint, Record Doc. No. 1.  This matter was referred to a United

States Magistrate Judge for all proceedings and entry of judgment in accordance with 28

U.S.C. § 636(c), upon the written consent of all parties.  Record Doc. No. 11.

Pending before me is defendant's Motion for Sanctions, Record Doc. No. 38, as

supplemented, Record Doc. No. 57, seeking dismissal of the instant case and an award

of all of its attorney's fees expended in this matter.  The principal bases of defendant's

motion are its assertions that Wagner committed perjury during his deposition, produced

falsified safety certification credentials during discovery and failed to comply with this

court's orders.  Having considered the complaint, the record, the written submissions of

the parties, the arguments and plaintiff's testimony during the hearing conducted on July

31, 2012, and for the following reasons, **IT IS ORDERED** that defendant's motion is GRANTED IN PART AND DENIED IN PART as follows.

I.    PROCEDURAL BACKGROUND

After Boh Bros. filed a motion for summary judgment on all of plaintiff's claims, Wagner in his opposition memorandum voluntarily dismissed his failure to promote and hostile work environment claims.  On July 3, 2012, the court dismissed with prejudice his failure to promote and hostile environment claims, but denied defendant's summary judgment motion as to plaintiff's remaining retaliation claims.  Record Doc. No. 43.  The joint pretrial order was then due to be delivered to the court on July 13, with the final pretrial conference scheduled for July 17 and a jury trial set for July 30, 2012.  Record Doc. No. 12.

On July 2, 2012, Boh Bros. filed a Motion for Sanctions, seeking dismissal of the entire case (or alternatively, serious evidentiary sanctions) and an award of attorney's fees.  Defendant argued that Wagner had committed perjury during his deposition and had produced falsified safety certification credentials during discovery in this matter. Record Doc. No. 38.

Wagner's memorandum in opposition to defendant's motion was due on July 10, 2012.  However, on July 5, 2012, plaintiff's attorney moved to withdraw as counsel of record because, he asserted, plaintiff had terminated his employment and/or had terminated all meaningful communication with him and refused to cooperate in

responding to defendant's motion for sanctions and in preparing the pretrial order. Record Doc. Nos. 46, 49.

The court conducted a telephone conference regarding the motion to withdraw on July 10, 2012. I granted the motion to withdraw and postponed the deadline to submit the pretrial order, the final pretrial conference and the trial dates, to be reset at a later date, if appropriate. I extended until Friday, July 20, 2012 at noon the deadlines by which plaintiff must file with the court and serve on defense counsel his (a) written response to defendant's motion for sanctions; (b) supplemental answer to defendant's Interrogatory No. 11; and (c) proposed pretrial order inserts. Plaintiff was instructed that failure to comply with this order by timely making these submissions may result in dismissal of this lawsuit with prejudice for failure to prosecute and/or as a sanction under Fed. R. Civ. P. 37(b) and 16(f). I also ordered Wagner to appear in person before me on July 31, 2012, to discuss his future representation and the currently pending motions and orders in the case, to show cause for any failure to comply with my order and to set new trial and final pretrial conference dates, if appropriate. Record Doc. No. 51.

The order was served on Wagner by e-mail, by first-class mail, id., and by the United States Marshal on July 17, 2012 at plaintiff's address of record. Record Doc. No. 52. On the afternoon of July 20, 2012, defendant's counsel advised the court in writing that Wagner had failed to produce by noon that day his (a) written response to defendant's motion for sanctions; (b) supplemental answer to defendant's Interrogatory

No. 11; and (c) proposed pretrial order inserts, as the court had ordered.  Counsel for Boh Bros. also advised the court that she would file a supplemental memorandum in support of defendant's motion for sanctions, seeking additional sanctions for plaintiff's failure to comply with the court's July 10th order.  Record Doc. No. 53.

Defendant moved for leave to file its supplemental memorandum on July 25, 2012. The motion was granted on July 31, 2012.  Record Doc. Nos. 54, 56, 57.

On July 26, 2012, Wagner, appearing pro se, filed a statement in which he asserted that he had not terminated his attorney and that he had cooperated with all of his attorney's requests.  He stated that, on the day after the court denied defendant's summary judgment motion, "things changed with my attorney acting funny[1] and telling me he wants to withdraw as my attorney[.]  I refuse[d] to do that 2 1/2 weeks before my trail [sic].  So I am asking for a motion against me by defendant to be dismissed[.]  I have no way to afford it in these tough times."  Record Doc. No. 55.  This statement in no way responds to or complies with the court's July 10th order.

On July 31, 2012, Wagner appeared before the court as ordered.  At the hearing, he was given the opportunity to respond to defendant's supplemental memorandum and

---

[1]Since plaintiff's written opposition to defendant's motion for sanctions was coming due at about that time, when plaintiff's counsel had just completed the intellectually and physically time-consuming task of opposing defendant's motion for summary judgment, I surmise that this alleged exchange between plaintiff and his former counsel must have occurred at about the time that counsel had fully evaluated and digested the impact and effect of the evidence of plaintiff's falsehoods attached to the sanctions motion.

4

to explain why he had not complied with the court's July 10th order.  He submitted some documents to the court and defendant's counsel, which were filed into the record as a supplemental opposition to defendant's motion for sanctions.  Record Doc. No. 59. Among the documents provided by plaintiff at the hearing, defendant's counsel identified one two-page document entitled "Official Transcript" from the National Center for Construction Education and Research, dated November 12, 2007, which was responsive to defendant's discovery requests, but had <u>not</u> been produced by plaintiff during discovery.  Since the July 31st hearing, plaintiff has made no additional submissions to the court, and despite his assurances at the hearing that new counsel would enroll to represent him within two weeks, no such appearance has been made.

II.    <u>ANALYSIS</u>

    A.    <u>Factual Background</u>

While employed by Boh Bros. as a laborer in 2011, Wagner sought promotion to a safety position.  In connection with his request, he gave copies of his safety credentials to John Lipani, defendant's in-house counsel.  One of the credentials he provided to Lipani was an "OSHA 30 card" dated May 17, 2007 and bearing the identification number 600266442.  Defendant's Exh. A, Record Doc. No. 38-2, deposition of Darrell Wagner, at p. 233; Defendant's Exh. B, Record Doc. No. 38-3, deposition of John Lipani, at p. 13; Defendant's Exh. C, Record Doc. No. 38-4, Bates No. BOH000036, OSHA card number 600266442 dated May 17, 2007 (referred to in plaintiff's deposition as Exhibit

16).  An OSHA 30 card is issued by the Occupational Safety and Health Administration

("OSHA") to certify that a person has successfully completed a 30-hour safety training

course.  Defendant's Exh. F, Record Doc. No. 38-7, declaration under penalty of perjury

of Shelly Mire, Director of Operations at the Gulf Coast Safety Council, formerly known

as the Greater New Orleans Industrial Educational Council (the "Safety Council"), in St.

Rose, Louisiana, at ¶ 6.

Lipani forwarded plaintiff's credentials to defendant's safety department.  A few

days later, Wagner filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC"), alleging that Boh Bros. had failed to promote him

because of his race.  Supervisory employees of Boh Bros. interviewed Wagner for a

safety position two days later.  Later that same day, defendant terminated plaintiff's

employment for reasons unrelated to his safety credentials.  Wagner then filed a second

EEOC charge of retaliatory termination.

In the instant lawsuit, plaintiff brought claims of racially discriminatory failure to

promote, racially hostile work environment and retaliation for having filed his first

EEOC charge.  His complaint alleged that he had "obtained many safety training

certifications; such as, OSHA training."  Record Doc. No. 1, at ¶ 11.[2]

During discovery concerning plaintiff's failure to promote claim, Boh Bros. asked

Wagner to produce his safety credentials, including any OSHA 30 cards that he had

_____

[2]Boh Bros. does not seek sanctions under Fed. R. Civ. P. 11.

obtained.  Plaintiff produced a second OSHA 30 card dated May 17, 2008 and bearing identification number 409012455.  Defendant's Exh. A, Record Doc. No. 38-2, Wagner deposition, at p. 247; Defendant's Exh. D, Record Doc. No. 38-5, Bates No. 000071, card number 409012455 dated May 17, 2008 (referred to in plaintiff's deposition as Exhibit 17).

The evidence does <u>not</u> establish that Wagner produced in discovery the OSHA card number 600266442 dated May 17, 2007, Bates No. BOH000036.  It appears that defendant already had it, as indicated by the facts above and the Bates Number with the prefix BOH.

Defendant deposed Wagner on March 12, 2012.  Plaintiff testified that he had obtained his OSHA 30 card in 2005 upon completion of a 30-hour OSHA training course at the Gulf Coast Safety Council (the "Safety Council") in St. Rose, Louisiana.  He stated that he lost that card around March 2007 and then contacted the Safety Council for a replacement.  He testified that he received by mail from the Safety Council a re-issued OSHA 30 card with the number 600266442, dated May 17, 2007.  He identified this card as the one he had given to Lipani while he was employed at Boh Bros. in 2011.  Wagner testified that the OSHA 30 certification expires after four years and that he had received a new OSHA 30 card in June 2011, but had not yet provided that card to his attorney.  Defendant's Exh. A, deposition of Darrell Wagner, at pp. 50-53, 71-72, 233-39, 247.

On April 18, 2012, Boh Bros. served a second set of written discovery requests on Wagner, seeking information and documentation related to his OSHA 30 training courses, the two OSHA 30 cards bearing numbers 600266442 and 409012455 and the new OSHA 30 card that he testified he had obtained in 2011.  In his response to Interrogatory No. 2, which seeks detailed information about his training and the two previously produced OSHA 30 cards, Wagner, through his attorney, stated that he

> does not recall the specifics regarding the OSHA-30 cards produced as documents bates labeled as BOH000036 and 000071.  As indicated on the documents, Plaintiff took one class on or about May 17, 2007 and another on or about May 18, 2008.  The trainer for both classes appears to be C.L. Grove, CET.

Defendant's Exh. E, Record Doc. No. 38-6, Plaintiff's Answer to Interrogatory No. 2 of Defendant's Second Set of Interrogatories dated May 25, 2012, at p. 2.  However, this interrogatory answer is <u>not</u> signed under oath by Wagner, as required by Fed. R. Civ. P. 33(b)(1)(B), (3) and (5), and Boh Bros. never moved to compel a proper verification.

The requirement that a party sign his interrogatory answers under oath is critical because interrogatory answers may be used only "to the extent allowed by the Federal Rules of Evidence."  Fed. R. Civ. P. 33(c).  Thus, "interrogatories serve not only as a discovery device but as a means of producing <u>admissible evidence</u>; there is no better example of an admission of a party opponent, which is admissible because it is <u>not</u> hearsay (Fed. R. Evid. 801(d)(2)), than an answer to an interrogatory."  <u>Melius v. Nat'l</u>

8

Indian Gaming Comm'n, No. 98-2210, 2000 WL 1174994, at *1 (D.D.C. July 21, 2000) (emphasis added); accord Walls v. Paulson, 250 F.R.D. 48, 52 (D.D.C. 2008).

In this instance, Wagner's answer to Interrogatory No. 2 is not admissible as evidence of his alleged lying under oath (or for any other purpose) because he did not sign it under oath.   Unzicker v. A.W. Chesterston Co., No. MDL-875, 2012 WL 1966028, at *2 (E.D. Pa. May 31, 2012) (citing United States v. $39,557.00 in U.S. Currency, 683 F. Supp. 2d 335, 340-41 (D.N.J. 2010); Villareal v. El Chile, Inc., 266 F.R.D. 207, 211 (N.D. Ill. 2010); Tokarz v. TRG Columbus Dev. Venture, Ltd., No. 08-60190, 2008 WL 4533917, at *2 (S.D. Fla. Oct. 6, 2008); Overton v. City of Harvey, 29 F. Supp. 2d 894, 901 (N.D. Ill. 1998); Cabales v. United States, 51 F.R.D. 498, 499 (S.D.N.Y.1970)); In re Garcia, 11 B.R. 10, 12 (Bankr. D. Ariz. 1981).

In response to defendant's Requests for Production Nos. 4 and 5 of defendant's second set of such requests, Wagner stated that he had produced all documents in his possession relating in any way to the OSHA 30 training and certifications he had received and that he did not possess any responsive documents relating to an OSHA 30 card received in 2011.  Defendant's Exh. E, Record Doc. No. 38-6, Plaintiff's Responses to Requests for Production Nos. 4 and 5 of Defendant's Second Set of Requests for Production, at p. 5.

In the course of investigating the instant case, Boh Bros. obtained declarations under penalty of perjury pursuant to 28 U.S.C. § 1746 from two third-party witnesses

regarding Wagner's OSHA 30 credentials.  In a declaration dated May 23, 2012, Shelly Mire states that she has been employed at the Safety Council since 1999 and is now the Director of Operations.  She attests that she reviewed the Safety Council's "electronic training database showing a comprehensive training history, including OSHA training or certification courses, for any and all individuals registered with the Council." Defendant's Exh. F, Record Doc. No. 38-7, at ¶ 5.  Mire affirms that "if any individual attends or takes an OSHA 30 training course at any Gulf Coast Safety Council location, such attendance is reflected on his or her electronic training history."  Id.  She further avers that, if a person loses his OSHA 30 certification card, "he can only obtain a duplicate card from the Gulf Coast Safety Council by visiting one of our facility sites and presenting state/government issued identification and a social security card.  The Gulf Coast Safety Council does not, under any circumstances, issue duplicate OSHA 30 cards by mail . . . ."  Id. at ¶¶ 7-8.

Mire attests that Wagner has a training history at the Safety Council, a copy of which is attached to her declaration.  Based on plaintiff's training records, she "certif[ies] that Darrell Wagner (Badge Number: 40572) did not attend any OSHA 30 training courses at any Gulf Coast Safety Council location."  Id. at ¶¶ 11.  She "further certif[ies] that "Gulf Coast Safety Council did not, at any time, mail any duplicate OSHA 30 card(s) to Darrell Wagner."  Id. at ¶ 12.

Charlotte L. Grove states in her declaration that she is a resident of Destrehan, Louisiana and is employed as an Adjunct Instructor at the Infrastructure Training and Safety Institute, OSHA Training Institute Southwest Education Center – Texas Engineering Extension Service, a part of Texas A & M University System, located in College Station, Texas.  Record Doc. No. 38-8, Defendant's Exh. G, declaration of Charlotte L. Grove dated July 2, 2012, at ¶¶ 1-2.  Grove declares that she has been employed with Texas A & M for "nine years as an authorized OSHA Outreach Trainer in Construction, General Industry and Disaster Site Worker," has received all necessary training to conduct OSHA 30-hour training courses and issue course completion cards, and is authorized to sign her name to the OSHA 30 card, which certifies that a person has completed the 30-hour OSHA approved construction training course.  Id. at ¶¶ 2, 4, 5.

Grove states that she has reviewed copies of the two OSHA 30 cards with the identification numbers 600266442 and 409012455 dated May 17, 2007 and  May 17, 2008, which are attached to her declaration as Exhibits 1 and 2, respectively, and "which purportedly bear my signature and a Mr. Darrell A. Wagner, Sr.'s signature."  Id. at ¶ 6. She affirms that, "[u]pon reviewing my records, I determined that I never signed or issued the OSHA30 cards attached as Exhibit 1 and Exhibit 2 to Darrell A. Wagner, Sr." Id. at ¶ 7.  She continues:

> Instead, my records indicate that the true and correct OSHA-30 Hour Construction Card bearing the ID number 600266442 was issued to Mr. Kernell Lee Harrell, Sr.  A copy of the true and correct OSHA30 Hour

11

Construction Card bearing ID number 600266442 is attached as Exhibit 3. Therefore, Exhibit 1 is not a validly issued OSHA30 Hour Construction card. . . .

I further certify that my signature, as it appears on [Exhibit 1] . . . is a forgery as I did not sign [this] OSHA30 Hour Construction Card showing (No. 600266442) dated 5/17/07 to Mr. Darrell Wagner, Sr. as the course participant.

Id. at ¶¶ 8, 9.[3]

Grove further states that she issued the card that actually bears the identification number 600266442 to Kernell Lee Harrell, Sr. on May 17, 2008, not May 17, 2007, as shown on the card purportedly issued to Wagner. Id. at ¶ 11. Exhibit 3 attached to her declaration shows card number 600266442, which is indeed issued to Kernell Lee Harrell, Sr. on May 17, 2008, along with the sequentially numbered cards immediately preceding and succeeding that card. Card number 600266441 is also dated May 17, 2008, and 600266443 is dated either May 17 or 19, 2008. Record Doc. No. 38-8, at p. 6. Finally, Grove avers that she has never been an OSHA Outreach Construction Trainer at the Safety Council in St. Rose, Louisiana. Id. at ¶ 10.

Wagner has presented no evidence to refute Mire's or Grove's statements or to undermine the credibility of these non-party witnesses. Defendant's evidence establishes that plaintiff lied under oath in his deposition regarding his training and credentials, in

---

[3]Grove's additional assertions in paragraph 9 of her declaration regarding the "fraudulent" nature of the card bearing identification number 409012455 do not appear to be based on personal knowledge, as she refers to something that Donald Guerro, Officer of OSHA Training and Educational Programs, told defendant's attorney. That statement is inadmissible hearsay and has no probative value. Accordingly, I have not considered it.

that he never attended any 30-hour OSHA safety training course at the Safety Council and never obtained an OSHA 30 certification card bearing identification number 600266442 on May 17, 2007 or any other date.  Wagner produced in discovery a fraudulent OSHA 30 certification card bearing identification number 600266442, which had been altered to include his name and a different date than the actual card that was issued to Kernell Lee Harrell, Sr. on May 17, 2008.

In addition to his improper actions concerning the OSHA training and certification card, Wagner failed to comply with this court's order entered on July 10, 2012 to produce to defendant and the court no later than noon on July 20, 2012, his (a) written response to defendant's motion for sanctions; (b) supplemental answer to defendant's Interrogatory No. 11; and (c) proposed pretrial order inserts.  He has proffered no explanation for his failure to comply with this order.

Among the documents provided by plaintiff at the July 31, 2012 hearing, defendant's counsel identified one two-page document entitled "Official Transcript" from the National Center for Construction Education and Research, dated November 12, 2007 that she had never seen before.  She stated that this document was responsive to defendant's discovery requests in this case, but had not been produced by plaintiff during discovery.  Wagner responded that he had given this document to his attorney.

B.     Plaintiff's Contumacious Conduct

Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed and served no later than eight days before the noticed submission date.  No memorandum in opposition to defendant's Motion for Sanctions, Record Doc. No. 38, originally submitted for decision on July 2, 2012 without oral argument, was timely submitted before plaintiff's attorney was granted leave to withdraw on July 10, 2012, which was the due date for the opposition.  After that date, Wagner failed to file any opposition by the extended deadline of July 20, 2012.  Neither the statement that he filed on July 26, 2012, Record Doc. No. 55, nor the statements or documents he submitted at the hearing on July 31, 2012, Record Doc. No. 59, are relevant or responsive to defendant's motion for sanctions in that they do not directly address or refute the serious allegations against him made in the motion.

Wagner has committed several violations of the Federal Rules of Civil Procedure and this court's orders.  The court previously found in ruling on defendant's Motion to Compel and for Leave to Request Records After Discovery Deadline, Record Doc. No. 28, that plaintiff violated Fed. R. Civ. P. 26(e)(1) by failing to supplement his Answer to Interrogatory No. 11 in a timely manner.  No sanctions were imposed for that violation, but Wagner was ordered to answer the interrogatory by July 9, 2012.  Record Doc. No. 45. Despite my extension of this deadline to July 20, 2012, Record Doc. No. 51, he did not do so.

At the hearing on July 31, 2012, Wagner produced several documents, one of which was responsive to defendant's discovery requests concerning plaintiff's training and certifications, but which defense counsel said she had never seen. Plaintiff therefore violated his obligation to respond fully to defendant's requests for production by producing all responsive documents within 30 days of the request. Fed. R. Civ. P. 34(b)(2)(A). By delaying until the hearing to produce the document, he also violated his duty to supplement his discovery responses in a reasonably prompt manner. Fed. R. Civ. P. 26(e)(1).

Plaintiff violated Fed. R. Civ. P. 16(f)(1) by failing to participate in good faith in preparing the proposed joint pretrial order, which was originally due to be delivered to the court by July 13, 2012. As the court already found in ruling on his former attorney's motion to withdraw on July 10, 2012, "plaintiff himself – not his counsel – is currently in default of his obligations to (a) timely supplement – under oath – his incomplete answer to defendant's important Interrogatory No. 11, Fed. R. Civ. P. 26(e)(1), Record Doc. No. 45, and (b) assist his counsel in the preparation of the final pretrial order. Fed. R. Civ. P. 16(f)(1)(B) and (C)." Record Doc. No. 51 at p. 3.

Wagner personally failed to comply with this court's July 10, 2012 order that he file with the court and serve on defense counsel no later than July 20, 2012 his (a) written response to defendant's motion for sanctions; (b) supplemental answer to defendant's Interrogatory No. 11; and (c) proposed pretrial order inserts.

In addition, plaintiff made demonstrably false statements in his deposition. He testified that he had obtained his OSHA 30 card in 2005 upon successful completion of a 30-hour OSHA training course at the Safety Council in St. Rose, Louisiana. He testified that, after losing the OSHA 30 card that he had obtained as a result of that training, he asked for and received by mail from the Safety Council a re-issued OSHA 30 card with the number 600266442, dated May 17, 2007.   The uncontradicted declarations of disinterested third-party witnesses Mire and Grove establish that plaintiff's statements were false.  The declarations of Mire and Grove demonstrate that Wagner never attended a 30-hour OSHA training course at any Safety Council facility in 2005 or at any other time and that the Safety Council never mails out an OSHA 30 card.  The evidence further establishes that the OSHA 30 card numbered 600266442, about which plaintiff testified and on which he relied in this court to prove that he was qualified for a promotion, was not actually issued to him and was altered to insert his name and a different date.

## C.   Dismissal As a Sanction for Plaintiff's Contumacious Conduct

As sanctions for plaintiff's conduct, Boh Bros. asks that this case be dismissed and that it be awarded all of its attorney's fees and costs incurred in defending this case, an amount totaling almost $300,000.00.  This court may impose sanctions pursuant to Rules 16(f), 37(b)(2)(A) and 41(b) for Wagner's failures to comply with his obligations under the Federal Rules and with this court's scheduling and discovery orders.  The range of possible sanctions under the Federal Rules includes dismissal of the case; directing that

designated facts or matters be taken as established; prohibiting introduction of designated

evidence; striking pleadings; staying further proceedings; treating the failure to obey as

a contempt; and/or an award of the reasonable attorney's fees and costs caused by

plaintiff's noncompliance. Fed. R. Civ. P. 16(f)(1)(B), 16(f)(1)(C), 16(f)(2); Fed. R. Civ.

P. 37(b)(2)(A), 37(b)(2)(C); Fed. R. Civ. P. 41(b).

This court also has the inherent power to impose sanctions, up to and including

dismissal,

> upon proof that a fraud has been perpetrated upon the court. . . . [This
> power] is necessary to the integrity of the courts, for tampering with the
> administration of justice in [this] manner . . . involves far more than an
> injury to a single litigant.  It is a wrong against the institutions set up to
> protect and safeguard the public. . . .
>     Because of their very potency, inherent powers must be exercised
> with restraint and discretion.  A primary aspect of that discretion is the
> ability to fashion an appropriate sanction for conduct which abuses the
> judicial process. . . .  [O]utright dismissal of a lawsuit . . . is a particularly
> severe sanction, yet is within the court's discretion.  Consequently, the less
> severe sanction of an assessment of attorney's fees is undoubtedly within
> a court's inherent power as well.

Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) (quotations and citations omitted).

In Brown v. Oil States Skagit Smatco, 664 F.3d 71 (5th Cir. 2011), the Fifth

Circuit affirmed the dismissal of an employment discrimination lawsuit by a judge of this

court, who found that plaintiff had perjured himself by giving testimony in his deposition

taken in the case which directly conflicted with his deposition testimony given four

months earlier in a personal injury case that he had filed in a state court.  The Fifth

Circuit held that

> we ordinarily will affirm a dismissal with prejudice only if:  (1) there is a
> clear record of delay <u>or</u> contumacious conduct by the plaintiff, and
> (2) lesser sanctions would not serve the best interests of justice.  The
> district court's consideration of lesser sanctions should appear in the record
> for review of the court's exercise of its discretion.  Additionally, we
> consider dismissal with prejudice to be a more appropriate sanction when
> the objectionable conduct is that of the client, and not the attorney.

<u>Id.</u> at 77 (quotations and citations omitted).

> The Fifth Circuit held that plaintiff Brown's perjury
>
> constitutes contumacious conduct to justify the dismissal of his complaint.
> [I]t is not a party's negligence–regardless of how careless, inconsiderate,
> or understandably exasperating–that makes conduct contumacious; instead,
> it is the <u>stubborn resistance to authority</u> which justifies a dismissal with
> prejudice.  Before the start of his two depositions, Brown took an oath to
> tell the truth.  As the district court correctly observed, "This [oath] is not
> trivial.  The proper administration of justice depends on people testifying
> truthfully under oath."  We agree with the district court's determination that
> Brown defied this oath and committed perjury.
>        . . . . Brown deceitfully provided conflicting testimony in order to
> further his own pecuniary interests in the two lawsuits and, in doing so,
> undermined the integrity of the judicial process. Through his perjured
> testimony, Brown committed fraud upon the court, and this blatant
> misconduct constitutes contumacious conduct.

<u>Id.</u> at 77-78 (quotations and citations omitted).

> Addressing the question of the severity of the sanction of dismissal, the appeals

court stated that circuit precedent

> required that the district court use the least onerous sanction which will
> address the offensive conduct. . . . (district courts must show that sanctions

18

are not vindictive or overly harsh reactions to objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision).  Further, a district court's dismissal of an action with prejudice is appropriate only if its deterrent value cannot be substantially achieved by use of less drastic sanctions.

Id. at 78 (quotations and citations omitted).

The Fifth Circuit affirmed the district court's reasoning that lesser sanctions than dismissal "would not be appropriate to remedy Brown's misconduct."  Id.  The district court first rejected a monetary sanction because Brown was proceeding in forma pauperis and could not afford to pay attorney's fees.  The court then found that plaintiff's perjury had "effectively killed" his constructive discharge claim, leaving his racial harassment claim as his only viable claim.  Dismissal of his remaining claim, rather than just his constructive discharge claim, was appropriate because, "if Brown retains his claim for racial harassment, he suffers no penalty for perjuring himself in this action."  Id.

> The district court then concluded that dismissal of the entire complaint with prejudice was the only appropriate sanction commensurate with Brown's serious misconduct.  The district court also explained that this severe sanction was necessary under deterrence and institutional integrity rationales.  Under the deterrence rationale, the court explained that "not everyone like Brown will be caught," so "when [perjury] is discovered, the penalty needs to be severe enough to deter such conduct."  Regarding the protection of the judicial process against abuse, the court stated that "[t]he proper administration of justice depends on people testifying truthfully under oath."
> . . . .  The district court clearly stated that allowing Brown to proceed to trial would in effect be "no penalty" for his perjury.  [A lesser sanction of the admission of a fraud finding at trial] would be too lenient of a sanction and ineffective as a deterrent, as it would still allow Brown to proceed to trial.

> After analyzing the reasoning in the district court's opinion, we reject Brown's contention that the district court erred by failing to consider lesser sanctions and to impose the least onerous sanction appropriate. The district court did consider lesser sanctions and explicitly found that dismissal of the complaint in its entirety was the only effective sanction in this case. Under these circumstances, we cannot say that the district court abused its discretion.

Id. at 78-79 (footnote omitted) (citing Hull v. Municipality of San Juan, 356 F.3d 98, 103 (1st Cir. 2004); Martin v. DaimlerChrysler Corp., 251 F.3d 691, 695 (8th Cir. 2001); Brinkmann v. Dallas Cnty. Deputy Sheriff Abner, 813 F.2d 744, 750 (5th Cir. 1987); Sturgeon v. Airborne Freight Corp., 778 F.2d 1154, 1160 (5th Cir. 1985)).

> Ultimately, the Fifth Circuit held that the district court
>
> > came to a reasoned conclusion that dismissal of Brown's complaint with prejudice was the only effective, appropriate sanction commensurate with Brown's serious misconduct. . . . Brown's deceits were substantial, deliberate, and went to the heart of the case, and the district court did not abuse its discretion in dismissing his racial harassment claim.
> > . . . . Brown plainly committed perjury, a serious offense that constitutes a severe affront to the courts and thwarts the administration of justice. The district court determined that the dismissal of Brown's entire complaint was the only effective, appropriate sanction to remedy this misconduct and to deter future similar misconduct. Bolstering the court's conclusion is the fact that <u>Brown, and not his attorney, committed the sanctionable conduct, which makes the harsh sanction of dismissal with prejudice all the more appropriate</u>.

Id. at 80 (quotation and citation omitted) (emphasis added); see also Jackson v. Murphy, 468 F. App'x 616, 620 (7th Cir. 2012) (quotation and citations omitted) ("[T]he sanction of dismissal was entirely warranted. Jackson both perjured himself and forged a document critical to the prosecution of his case. His fraud was uncovered only after a

costly and contested hearing. . . . Jackson created a factual dispute where there was none, costing the defendants time and resources.  Finally, the court properly considered the need to deter future parties from trampling upon the integrity of the court.").

The factual circumstances and holdings of <u>Brown</u> are directly on point with the instant case and inform my decision to dismiss Wagner's case with prejudice.  I have considered lesser sanctions, such as those suggested in Fed. R. Civ. P. 37(b)(2).  Plaintiff certainly has suggested no other, less severe sanction.  His written response indicates an unwillingness to accept even a monetary sanction. A $300,000 monetary sanction, as sought by defendant, with the accompanying costs in time and fees to attempt to obtain payment and the attendant minuscule prospects that it would ever be paid, would be largely symbolic.  Thus, a sanctions order permitting plaintiff to proceed with his case on the condition that he first pay a large monetary sanction would be a vain and useless act.  An order precluding plaintiff from testifying at trial would probably harm defendant more than plaintiff, given his demonstrated disdain for the oath and the likely effect that would have on defendant's credibility choice defense at trial.  Similarly, precluding introduction of the false certification card at trial would more probably do more damage to the defense that plaintiff is not credible than to plaintiff himself.  I can conceive of no fact that could be deemed established and no presumption that might be imposed at trial that would either serve an adequate deterrent purpose or render further proceedings anything other than a waste of time and resources.

In short, I view all sanctions short of dismissal as ineffective to remedy the effects of plaintiff's false statements and improper litigation conduct.  However, just as in <u>Brown</u> and <u>Jackson</u>, I find that plaintiff's contumacious conduct justifies dismissal of his complaint with prejudice.  By lying under oath in his deposition, proffering a falsified document in support of his failure to promote claim and repeatedly failing to comply with this court's orders and the Federal Rules of Civil Procedure, Wagner has personally exhibited the stubborn resistance to authority that justifies a dismissal.  He lied in his deposition and relied on a falsified OSHA 30 card in furtherance of a pecuniary interest in prevailing in the instant lawsuit.  Although plaintiff voluntarily dismissed his failure to promote claim, which is the claim to which his false testimony was directly related, allowing him to proceed to trial on his remaining retaliation claim would in effect be "no penalty" for his perjury and would not serve as a deterrent to him or other persons who might be tempted to thwart the proper administration of justice by failing to testify truthfully under oath.  His violations of the Federal Rules and my order compound his most serious misconduct.

D.    <u>Defendant Is Entitled to an Award of Attorney's Fees</u>

In addition, I find that Wagner's perjury and his violations of the Federal Rules and this court's orders warrant the imposition of monetary sanctions.  Boh Bros. seeks an award of <u>all</u> of its attorney's fees and costs incurred in defending this lawsuit.  Defendant originally supported its request with the declaration under penalty of perjury

22

of its in-house counsel, Christopher Lyman.  Record Doc. No. 57-1.  Lyman declares that, as of July 23, 2012, Boh Bros. and its insurer have incurred $266,056.50 in attorney's fees and $14,159.26 in costs, including expert fees.  Since that time, defendant has submitted supplemental evidence that it has incurred an additional $31,012.56 in fees and costs.

Because the original submission was insufficient to establish the reasonableness of defendant's requested fees and costs, I ordered Boh Bros. to provide contemporaneous time reports in accordance with Local Rule 54.2.  Record Doc. No. 58.  Defendant timely complied and received leave to file a supplemental memorandum.  Record Doc. Nos. 61, 62, 64.  With its memorandum, defendant submitted partially redacted, contemporaneous time reports (which were filed under seal, Record Doc. No. 63) reflecting attorney time billed through June 30, 2012 and the affidavit of its lead counsel, Monique Gougisha Doucette, a shareholder (partner) at Ogletree, Deakins, Nash, Smoak & Stewart, attesting to the attached contemporaneous billing invoices, the experience of each attorney and the customary hourly rates for all attorneys who have worked on this case.  Record Doc. No. 64.  Defendant also provided unredacted copies of the billing statements to the court for in camera review.  On August 17, 2012, Boh Bros. provided additional, partially redacted, contemporaneous invoices for time billed through July 31, 2012, which were filed under seal, Record Doc. Nos. 65-68.  Defendant again provided unredacted copies to the court for in camera review.

I find that Boh Bros. may <u>not</u> recover <u>all</u> of its attorney's fees and costs at this time.  Instead, it is entitled to an award of the needless increase in fees it was compelled to incur because of and caused by plaintiff's perjury and his unjustified failure to comply with his obligations under the Federal Rules and this court's orders.  Fed. R. Civ. P. 16(f)(2); Fed. R. Civ. P. 37(b)(2)(C).

The Fifth Circuit recently outlined the lodestar method that federal courts traditionally use to determine reasonable attorney's fees.

> In determining the appropriateness of awards of attorneys' fees, district courts engage in a two-step process laid out in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). The first step requires the district court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court must multiply the reasonable hours by the reasonable hourly rates." <u>La. Power & Light Co. v. Kellstrom</u>, 50 F.3d 319, 324 (5th Cir. 1995). This first-step determination is known as the lodestar calculation. <u>Id.</u> As "[d]eterminations of hours and rates are questions of fact," we review a district court's lodestar calculation for clear error. <u>Id.</u> In the second-step, the lodestar, which is presumptively reasonable, can be adjusted upward or downward by the district court based on the district court's considerations of the <u>Johnson</u> factors. <u>Watkins v. Fordice</u>, 7 F.3d 453, 459 (5th Cir. 1993). In <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), we laid out twelve factors to be considered in deciding whether the lodestar ought to be adjusted. <u>See id.</u> at 718. Those factors are:
>
> > (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of

> the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the professional relationship with the
> client; and (12) awards in similar cases.
> No Barriers, Inc. v. Brinker Chili's Tex., Inc., 262 F.3d 496, 500 (5th Cir.
> 2001) (citing Johnson, 488 F.2d at 718). We review any adjustment based
> on the Johnson factors for abuse of discretion. La. Power & Light, 50 F.3d
> at 329. "We cannot overemphasize the concept that a district court has
> broad discretion in determining the amount of a fee award. This tenet is
> 'appropriate in view of the district court's superior understanding of the
> litigation and the desirability of avoiding frequent appellate review of what
> essentially are factual matters.'" Associated Builders & Contractors of La.,
> Inc. v. Orleans Parish Sch. Bd., 919 F.2d 374 (5th Cir. 1990) (quoting
> Hensley, 461 U.S. at 437). Finally, we review a district court's grant of
> litigation costs for abuse of discretion. Gagnon v. United Technisource,
> Inc., 607 F.3d 1036, 1045 (5th Cir. 2010).

Alexander v. City of Jackson, 456 F. App'x 397, 399-400 (5th Cir. 2011).

Because the lodestar is presumptively reasonable, it should be modified only in exceptional cases. Perdue v. Kenny A., 130 S. Ct. 1662, 1674 (2010); Watkins, 7 F.3d at 457 (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992)). Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Wegner v. Standard Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); La. Power & Light, 50 F.3d at 329.

Although the district court must explain its reasons for determining an award of attorney's fees, "the court need not explicitly calculate the lodestar to make a reasonable award." No Barriers, Inc., 262 F.3d at 501. The Fifth Circuit does "not require the trial

court's findings to be so excruciatingly explicit in this area of minutiae that decisions of

fee awards consume more paper than did the cases from which they arose." In re High

Sulfur Content Gasoline Prods. Liab. Litig., 517 F.3d 220, 228 (5th Cir. 2008) (quotation

omitted).

> The Supreme Court in Fox v. Vice, 131 S. Ct. 2205 (2011),
>
> emphasize[d], as we have before, that the determination of fees should not
> result in a second major litigation.  The fee applicant (whether a plaintiff
> or a defendant) must, of course, submit appropriate documentation to meet
> the burden of establishing entitlement to an award.  But trial courts need
> not, and indeed should not, become green-eyeshade accountants.  The
> essential goal in shifting fees (to either party) is to do rough justice, not to
> achieve auditing perfection.  So trial courts may take into account their
> overall sense of a suit, and may use estimates in calculating and allocating
> an attorney's time.

Id. at 2216.

"[O]f the Johnson factors, the court should give special heed to the time and labor

involved, the customary fee, the amount involved and the result obtained, and the

experience, reputation and ability of counsel."  Migis v. Pearle Vision, Inc., 135 F.3d

1041, 1047 (5th Cir. 1998) (citation omitted); accord Saizan v. Delta Concrete Prods.

Co., 448 F.3d 795, 800 (5th Cir. 2006).  Three of the Johnson factors, complexity of the

issues, results obtained and preclusion of other employment, are presumably fully

reflected and subsumed in the lodestar amount.  Heidtman v. County of El Paso, 171 F.3d

1038, 1043 (5th Cir. 1999) (quoting Pennsylvania v. Del. Valley Citizens' Council for

Clean Air, 478 U.S. 546, 565 (1986); Shipes, 987 F.2d at 319-22 & n.9).  After Johnson

was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent.  Walker v. U.S. Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington, 505 U.S. at 567; Shipes, 987 F.2d at 323).  The Supreme Court has also noted that "the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."  Kenny A., 130 S. Ct. at 1673.

It is well established that a court may reduce the amount of requested attorney's fees by a percentage to account for deficiencies in the documentation provided by the fee seeker, such as for lack of billing judgment, Saizan, 448 F.3d at 800; Walker, 99 F.3d at 770; when some claims have been dismissed and the work on those claims was not segregated in the attorney's billing statements from work on the remaining claims, Jimenez v. Wood County, 621 F.3d 372, 380 (5th Cir. 2010); Jason D.W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 211 (5th Cir. 1998); for duplicative attorney time, Saizan, 448 F.3d at 800; Jackson v. Capital Bank & Trust Co., No. 90-4734, 1994 WL 118322, at *13 (E.D. La. Mar. 30, 1994); for attorney travel time, In re Babcock & Wilcox Co., 526 F.3d 824, 827-28 (5th Cir. 2008); Watkins, 7 F.3d at 459; and for inadequate documentation or vagueness.  Saizan, 448 F.3d at 800; La. Power & Light, 50 F.3d at 326.

1.    Reasonable Hourly Rates

First, I must determine a reasonably hourly rate for each of defendant's attorneys who worked on this case.  "'[R]easonable" hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'  Further, . . . 'the burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" McClain v. Lufkin Indus., Inc., 649 F.3d 374, 381 (5th Cir. 2011) (quoting Blum v. Stenson, 465 U.S. 886, 895, 896 n.11 (1984)).

I find that the following requested hourly rates for defendant's attorneys and paralegals are well within the range of reasonable rates in the New Orleans market for attorneys and paralegals with the qualifications and experience established by the evidence.  These rates are also in line with recent decisions of the Fifth Circuit and this court awarding attorney's fees for the New Orleans legal market.  See Thompson v. Connick, 553 F.3d 836, 868 (5th Cir. 2008), rev'd on other grounds, 131 S. Ct. 1350 (2011) (approving hourly rates of $202 to $312 for experienced attorneys and $67 to $112 for paralegals as "at the upper range of what was reasonable in the" Eastern District of Louisiana from 2003 to 2007); Cedotal v. Whitney Nat'l Bank, No. 94-01397, 2010 WL 5582989, at *13 (E.D. La. Nov. 10, 2010), report & recommendation adopted as modified,[4] 2011 WL 127157 (E.D. La. Jan. 14, 2011) (awarding rates of $315 for senior

---

[4]The R&R was modified slightly to adjust hours, but not rates.

partners, $250 for junior partners and $150 for associates in 15-year-long ERISA litigation, based on current reasonable rate awards in this district); Ranger Steel Servs., LP v. Orleans Materials & Equip., Co., No. 10-112, 2010 WL 3488236, at *1, *3 (E.D. La. Aug. 27, 2010) (in breach of contract case, awarding rates of $360 in 2009 and $395 in 2010 for partner's work); Hebert v. Rodriguez, No. 08-5240, 2010 WL 2360718, at *2 (E.D. La. June 8, 2010), aff'd, 430 F. App'x 253 (5th Cir. 2011) (rejecting requested rate of $350 and awarding $300 per hour to "a seasoned civil rights attorney with over 33 years of experience"); Braud v. Transp. Serv. Co., No. 05-1898, 2010 WL 3283398, at *15 (E.D. La. Aug. 17, 2010) (hourly rates of $200 for attorney with 30 years of experience and $75 for paralegal "are within the low end of the range of the market rate in this area and . . . are reasonable"); Oreck Direct, LLC v. Dyson, Inc., No. 07-2744, 2009 WL 1649503, at *4 (E.D. La. June 8, 2009) (in case brought under the Lanham Act and Louisiana Unfair Trade Practices Act, when "the top rate for partner-level attorneys [in the New Orleans market] is between $400 and $450 per hour," awarding a single rate of $400 for partners and associates "as more in line with local rates for similar services" than the requested rates for out-of-town counsel).

Doucette's affidavit and its attached exhibits establish that all three attorneys who worked on this case specialize in labor and employment litigation. Doucette graduated from law school in 2002 and is a shareholder in the Ogletree, Deakins firm. Sarah J. Murphy is an associate who graduated from law school in 2008. Another attorney, Steven

Hymowitz, also worked on the case, although he is not enrolled as counsel of record. He is of counsel with the law firm, graduated from law school in 1974 and is AV rated by Martindale Hubbell. Defendant requests hourly rates of $275 for the work of Doucette and Hymowitz and $235 for that of Murphy.

Doucette affirms that these are the effective rates charged to defendant and that, based on her experience, they are reasonable for employment litigators with comparable experience in the New Orleans market. Based on my own experience and the case law cited above, I agree. Although Boh Bros. has not submitted any evidence to support the $100 per hour rate charged by the paralegals who worked on this case, I find, for purposes of the present motion, that this rate is reasonable. Accordingly, I will award attorney's and paralegal's fees at the requested rates.

2.    Reasonable Hours Billed

Next, I must determine the reasonable number of hours that defendant's counsel expended on that portion of the litigation as to which I am awarding fees. As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded. Watkins, 7 F.3d at 457. Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. Green, 284 F.3d at 662 (citing Walker, 99 F.3d at 769); accord Hensley, 461 U.S. at 433-34. The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they

30

exercised billing judgment." Walker, 99 F.3d at 770. "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." Id. (reducing fee award by 15% for lack of billing judgment) (citing Leroy v. City of Houston, 831 F.2d 576, 586 (5th Cir. 1987) (reducing award by 13%)); see also Saizan, 448 F.3d at 800 (affirming 10% reduction for vagueness, duplicative work and lack of billing judgment); Hopwood v. Texas, 236 F.3d 256, 279 (5th Cir. 2000) (approving 25% reduction based on inadequacy of time entries, duplicative work product and lack of billing judgment).

I find that defendant may recover its fees for all attorney and paralegal time spent on the following:  (1) investigating the allegations of plaintiff's complaint and his testimony that he possessed safety credentials that qualified him for a promotion; (2) preparing and prosecuting defendant's Motion to Compel and for Leave to Request Records After Discovery Deadline, Record Doc. No. 28, which was filed on June 20, 2012 and which was granted because Wagner had violated Rule 26(e)(1) by failing to supplement his Answer to Interrogatory No. 11; (3) preparing defendant's pretrial inserts and working with Wagner's attorney regarding preparation of the pretrial order; (4) preparing the instant motion for sanctions, including all supplemental memoranda; and (5) preparing for and attending hearings after plaintiff's attorney moved for leave to withdraw as counsel of record on July 5, 2012.  All of the work in these areas was caused by Wagner's contumacious failure to comply with his obligations under the Federal

Rules of Civil Procedure and this court's orders.  An award of these fees is an appropriate sanction for his conduct.

Although Boh Bros. has not submitted any evidence that its attorneys exercised billing judgment, I find that the law firm's invoices are generally well documented and that the amount of time spent on tasks related to the above listed areas is generally appropriate and not excessive. I have already discounted the amount of fees that defendant seeks by limiting it to the areas listed above.  Accordingly, I will not make any additional deductions for lack of billing judgment at this time.

I have reviewed the law firm's contemporaneous time reports and identified individual time entries that are related to the above listed areas.  I have not included in my calculations any time entries that were unclear or ambiguous as to whether they encompassed the listed topics.  Based on this review, I find that, **through June 30, 2012**, defendant incurred the following compensable, reasonable hours and attorney's fees attributable to plaintiff's misconduct:

| Timekeeper | Reasonable Hours | Hourly Rate | Reasonable Fees |
|---|---|---|---|
| Monique Gougisha Doucette | 37.60 | $275 | $10,340.00 |
| Sarah J. Murphy | 28.20 | $235 | $ 6,627.00 |
| Paralegals | 1.80 | $100 | $   180.00 |
| [TOTAL | 67.60 | | $17,147.00] |

I further find that, after June 30, 2012, Record Doc. Nos. 65-68, defendant incurred the following compensable, reasonable hours and attorney's fees, including time

needlessly spent on preparation for trial and final pretrial conference; defendant's motion for sanctions, its supplementation and accounting for associated attorneys' fees; and the hearings and conferences necessitated by plaintiff's conduct resulting in the motion for sanctions, all as a result of plaintiff's conduct:

| Timekeeper | Reasonable Hours | Hourly Rate | Reasonable Fees |
|---|---|---|---|
| Monique Gougisha Doucette | 30.10 | $275 | $ 8,277.50 |
| Sarah J. Murphy | 16.90 | $235 | $ 3,971.50 |
| Paralegal | 1.10 | $100 | $   110.00 |
| [TOTAL | 48.10 | | $12,359.00] |

Boh Bros. has not requested any enhancement of its fees based on the Johnson factors. After eliminating the factors that are subsumed in the lodestar or prohibited from consideration, only four factors remain for analysis: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client and awards in similar cases. The customary fee and awards in similar cases have already been evaluated in establishing a reasonable hourly rate. Defendant does not argue that the nature and length of the professional relationship with its attorneys are relevant or that the case was undesirable. I find that the lodestar amount is reasonable in this case and that no further reduction or enhancement is appropriate or required.

Accordingly, I award Boh Bros. a reasonable attorney's fee of $29,506.00.

33

E.      <u>Plaintiff to Bear All Costs</u>

Although the contemporaneous invoices contain entries for costs expended, I do not award any costs as a sanction at this time.  However, I will enter judgment in defendant's favor and order plaintiff to bear all costs of this proceeding.  Fed. R. Civ. P. 54(d)(1).  Defendant may then move for an award of its recoverable costs pursuant to Fed. R. Civ. P. 54(d)(1) and Local Rules 54.3 and 54.3.1.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendant's Motion for Sanctions, Record Doc. No. 38, is GRANTED IN PART in that defendant's request for dismissal and for <u>some</u> of its attorneys' fees incurred in defending this action will be granted. The motion is DENIED IN PART in that defendant's request for an award of <u>all</u> of its attorneys' fees will <u>not</u> be granted. Judgment will be separately entered dismissing plaintiff's claims with prejudice and awarding defendant a reasonable attorney's fee of $29,506.00, plaintiff to bear all costs of this proceeding.

New Orleans, Louisiana, this _____22nd_____ day of August, 2012.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE